## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DERRICK HOWARD,

       Plaintiff,

v.

FARMERS INSURANCE COMPANY,
INC., MID-CENTURY INSURANCE
COMPANY, INC., GREGORY SCHER,
WOOLLS PEER DOLLINGER &
SCHER, and KIMBERLY HASKINS,

       Defendants.

Case No.  18-4011-DDC-GEB

## MEMORANDUM AND ORDER

Before the court is defendants Farmers Insurance Company, Inc. ("Farmers") and Mid-Century Insurance Company, Inc.'s ("Mid-Century") Motion to Dismiss (Doc. 24).  Also before the court is defendants Gregory Scher and Woolls Peer Dollinger & Scher's ("WPDS") Motion to Dismiss Action (Doc. 26).  Although the court has granted plaintiff Derrick Howard multiple extensions of time to file a response to the motions, Mr. Howard did not timely respond.  Nor did Mr. Howard respond to the court's Notice and Order to Show Cause (Doc. 35) requiring him to explain why the court should not dismiss his claim against defendant Kimberly Haskins.  Having reviewed the opening papers and the relevant legal authority, the court concludes (1) Mr. Howard's claims against Farmers and Mid-Century are barred by the applicable statutes of limitations or must be raised in the Central District of California; and (2) Mr. Howard has not advanced any allegations that support the court's personal jurisdiction over Mr. Scher and WPDS.  The court also dismisses the action against Ms. Haskins for failure to complete service of process and failure to prosecute.

## I.    Factual Allegations

The court derives the following factual allegations from Mr. Howard's pro se Complaint (Doc. 1).  And, the court construes Mr. Howard's Complaint liberally because he proceeds pro se.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").

In the early 2000s, Mr. Howard owned two properties in St. Louis, Missouri—4423 Kossuth Avenue and 4433 Kossuth Avenue.  Doc. 1 at 5 (Compl. ¶¶ 5–7).  Mr. Howard purchased insurance policies for both properties from Mid-Century, a subsidiary of Farmers.  *Id.* Policy Numbers 92564-26-92 and 92838-63-11 covered 4423 Kossuth Avenue while Policy Number 92564-27-03 covered 4433 Kossuth Avenue.  *Id.* at 6–7 (Compl. ¶¶ 12, 14). Mr. Howard rented both properties and Ms. Haskins was a tenant at one of the properties.  *Id.* at 6 (Compl. ¶ 11).  In 2006, Mr. Howard filed an insurance claim with Farmers and Mid-Century on Policy Number 92838-63-11 for vandalism and theft at 4423 Kossuth Avenue.  *Id.* at 6–7 (Compl. ¶¶ 9, 12–13).  On September 14, 2006, Farmers denied the claim, concluding 4423 Kossuth Avenue was vacant at the time of the alleged vandalism and theft.  *Id.* at 7 (Compl. ¶ 13).  A little over a year later, on December 1, 2007, Farmers and Mid-Century notified Mr. Howard that they had cancelled Policy Number 92564-27-03 for 4433 Kossuth Avenue because he failed to pay his premiums.  *Id.* at 7 (Compl. ¶ 14).  Mr. Howard alleges he maintained his premiums and that, but for Farmers and Mid-Century canceling Policy Number 92564-27-03, he would have filed an insurance claim for damage at 4433 Kossuth Avenue.  *Id.* at 9 (Compl. ¶ 20).

In February 2012, Mr. Howard, in the Central District of California, filed an action against Farmers, Mid-Century, and several individual defendants who are not parties to the action before this court. *Id.* at 8 (Compl. ¶ 17); *see also Howard v. Farmers Ins. Co.*, No. 2:12-cv-01068-DDP-JC (C.D. Cal. Feb. 13, 2012). Mr. Howard's action in the Central District of California advances claims for breach of contract and vexatious refusal. Doc. 1 at 8 (Compl. ¶ 17). The California action remains pending on the date of this Order, with trial presently scheduled for September 17, 2019. *See Howard*, No. 2:12-cv-01068-DDP-JC (C.D. Cal. June 20, 2019) (order continuing trial from July 2, 2019, to September 17, 2019). And, in the California case, Farmers and Mid-Century are represented by WPDS, with Mr. Scher as counsel of record. *See id.* (Docket Sheet); *see also* Doc. 1 at 15 (Compl. ¶ 45).

In his action before this court, Mr. Howard alleges that WPDS hired a private investigator to locate Ms. Haskins. *Id.* And Mr. Howard contends that, at Mr. Scher's direction, the private investigator offered Ms. Haskins an all-expense paid vacation to Los Angeles, California, and provided her an upfront cash payment in exchange for testimony that she had vacated 4423 Kossuth Avenue before the vandalism and theft occurred. *Id.* at 15–18 (Compl. ¶¶ 45–48). Mr. Howard further alleges that Mr. Scher and WPDS solicited this testimony from Ms. Haskins to support Farmers's and Mid-Century's denial of coverage based on 4423 Kossuth Avenue being vacant, but they knew Ms. Haskins's proposed testimony was false. *Id.*

Mr. Howard initiated this five-count action in February 2018. At the time, Mr. Howard resided in Florida. *Id.* at 4. Count One advances a fraudulent misrepresentation claim against Farmers and Mid-Century based on their statement to Mr. Howard that Policy Number 92564-27-03, covering 4433 Kossuth Avenue, lapsed for non-payment of premiums. *Id.* at 8–10 (Compl. ¶¶ 18–21). Count Two raises a claim for fraudulent misrepresentation, alleging that

3

Farmers and Mid-Century, in the course of defending the California action, denied the existence of Policy Number 92564-26-92. *Id.* at 10–12 (Compl. ¶¶ 22–31). Count Three makes a breach of contract claim against Farmers and Mid-Century for denying coverage for vandalism and theft at 4423 Kossuth Avenue. *Id.* at 12–13 (Compl. ¶¶ 32–37). And, Count Four seeks damages for vexatious refusal of insurance coverage, contending that Farmers and Mid-Century did not properly investigate whether 4423 Kossuth Avenue was vacant at the time of the vandalism and theft and that the property was not "vacant" under Missouri law. *Id.* at 14–15 (Compl. ¶¶ 38–42). Finally, Count Five advances a claim for civil conspiracy against all defendants based on their coordinated effort to deceive the Central District of California through the purchased and perjured testimony of Ms. Haskins. *Id.* at 15–19 (Compl. ¶¶ 43–50). Mr. Howard alleges damages "in excess of $250,000.00" on each of his five claims for relief. *Id.* at 19.

## II.     Procedural History and Pending Motions

The court granted Mr. Howard's motion to proceed in forma pauperis. Doc. 9. Mr. Howard sought waivers of service of process for all defendants. Docket Entry dated June 8, 2018. The waiver for Ms. Haskins was returned unexecuted. Doc. 11. In August 2018, the court ordered Mr. Howard to provide a physical address for service of process for each defendant. Doc. 12. After receiving an extension of time to comply with the court's Order and to complete service of process, Mr. Howard provided addresses for each defendant. Docs. 13–16. On October 3, 2018, summonses were issued for each defendant. Docket Entry dated October 3, 2018. Summonses were returned executed for Farmers, Mid-Century, Mr. Scher and WPDS. Docs. 17–19, 29. But, on February 11, 2019, the summons for Ms. Haskins was returned unexecuted. Doc. 34. And, on February 28, 2019, the court ordered Mr. Howard to show cause why the court should not dismiss his claim against Ms. Haskins for failure to

prosecute. Doc. 35. The March 29, 2019, deadline for Mr. Howard to respond to the Notice and Order to Show Cause passed without Mr. Howard filing a response or moving for an extension of time. As of the date of this Order, Mr. Howard has not responded to the Notice and Order to Show Cause.

On November 2, 2018, Farmers and Mid-Century moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 24. Farmers and Mid-Century make three arguments in support of their motion. First, they contend Counts One and Two are restyled versions of Count Three and must be raised as breach of contract claims rather than tort claims for fraudulent misrepresentation. Doc. 25 at 4–7. Second, they argue that all the claims are barred by applicable Missouri statutes of limitations—a 10-year statute of limitations governing claims for breach of written contracts and a five-year statute of limitations governing claims for fraudulent misrepresentation. *Id.* at 7–11 (citing Mo. Rev. Stat. §§ 516.100, 516.110, 516.120). Third, they assert the case should be dismissed under the prior pending action rule because Mr. Howard's action in the Central District of California remains pending and the claims in this action are duplicative of those raised in the California action. *Id.* at 11–15.

On November 6, 2018, Mr. Scher and WPDS filed their motion to dismiss, relying on Federal Rules of Civil Procedure 12(b)(2) and (b)(3). Doc. 26. They argue the court lacks personal jurisdiction over them because they have no contacts with Kansas and none of the events underlying the action are alleged to have occurred in Kansas. Doc. 27 at 7–10. In the alternative, they argue venue is improper in Kansas and the court either should dismiss the action or transfer the action to the Central District of California under 28 U.S.C. §§ 1404(a), 1406(a). *Id.* at 10–14.

Mr. Howard successfully moved for two extensions of time to file his responses to the motions to dismiss. *See* Docs. 30, 32 (motions for extensions of time); Docs. 31, 33 (orders granting motions for extensions of time). The second Order granting the motion for extension set a March 27, 2019, deadline for Mr. Howard to respond and warned Mr. Howard that the court did not anticipate granting a third extension of time. Doc. 37. In April 2019—approximately five months after Farmers, Mid-Century, Mr. Scher, and WPDS had filed their motions to dismiss and after the twice-extended response deadline had passed—Mr. Howard moved for another extension of time to file his responses. Doc. 39. The court denied Mr. Howard's April 2019 motion for an extension of time and took the two motions to dismiss under advisement on the opening papers filed by Farmers, Mid-Century, Mr. Scher, and WPDS. Doc. 41. This Order addresses the two motions to dismiss, as well as Mr. Howard's claim against Ms. Haskins.

### III. Discussion

#### A. Farmers and Mid-Century's Motion

##### 1. Rule 12(b)(6) Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). On a motion to dismiss

like this one, the court assumes that a complaint's factual allegations are true, but need not accept mere legal conclusions as true. *Id.* at 1263.

The court also will grant a motion to dismiss if an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). And "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* at 327 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### 2.    Analysis

Because different theories justify dismissing different claims for relief, the court discusses some threshold issues about the statute of limitations issue and the prior pending action rule. Then, the court applies controlling authority to a given claim for relief.

### i.    Statute of Limitations, Choice of Law

Before the court can conclude if a given claim is time-barred, it must determine which statute of limitations applies. This determination involves a choice of law issue because the court sits in Kansas but the events underlying the action occurred outside Kansas.

"A federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Ace Prop. & Cas. Ins. Co. v. Superior Boiler Works, Inc.*, 504 F. Supp. 2d 1154, 1158 (D. Kan. 2007). Because it sits in Kansas, the court must apply Kansas choice of law provisions. *Safeco Ins. Co. of Am. v. Hilderbrand*, 602 F.3d 1159, 1163 (10th Cir. 2010).

"Generally, the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply." *In re K.M.H.*, 169

P.3d 1025, 1032 (Kan. 2007) (quotation marks omitted). Under Kansas law, "[t]he general rule in respect to limitation of actions is that the law of the forum governs, and if any exceptions to this rule are to be recognized, such exceptions must be found in the law of the forum itself." *Muzingo v. Vaught*, 859 P.2d 977, 979 (Kan. Ct. App. 1993) (quoting *Green v. Kensinger*, 429 P.2d 95, 98 (Kan. 1967)). But, Kansas has adopted a "borrowing statute," which buffets the statute of limitations for claims brought by non-Kansans if they arise from actions occurring outside of Kansas. *Id.* "The function of a borrowing statute is to override the *otherwise controlling forum state's statute of limitations* where the statute of limitations of the state in which the cause of action arose would bar the action." *Goldsmith v. Learjet, Inc.*, 917 P.2d 810, 817 (Kan. 1996).

The Kansas borrowing statute provides:

Where the cause of action has arisen in another state or country and by the laws of the state or country where the cause of action arose an action cannot be maintained thereon by reason of lapse of time, no action can be maintained thereon in this state except in favor of one who is a resident of this state and who has held the cause of action from the time it accrued.

Kan. Stat. Ann. § 60-516. Under the borrowing statute, "if the cause of action arose in another jurisdiction [a court must apply] the other jurisdiction's statute of limitations if it would result in the action being time-barred." *Garcia v. Int'l Elevator Co., Inc.*, 358 F.3d 777, 779 (10th Cir. 2004). "But the borrowing-statute exception is of use only on defense, a tool to keep nonresident, forum-shopping plaintiffs from exploiting advantageous Kansas limitations periods." *Patterson v. Williams*, 500 F. App'x 792, 794 (10th Cir. 2012). "It won't work 'to make timely an action barred by Kansas law,' because § 60-516 does nothing to change the fact that 'another state's statute may not be used to *extend* the Kansas limitations period.'" *Id.* (brackets omitted) (quoting *Muzingo*, 859 P.2d at 980).

Here, Mr. Howard is a citizen of Florida. Doc. 1 at 2 (Compl. ¶ 1). And the acts giving rise to this action occurred in Missouri primarily, with a few acts occurring in California. The Kansas borrowing statute thus applies to Mr. Howard's claims. Under the Kansas borrowing statute's rubric, the court normally would look first at the Kansas statute of limitations governing each of Mr. Howard's claims. And then, it would consider the out-of-state statute of limitations only for an action that is timely under the relevant Kansas statute of limitations. But, "the statute of limitations defense is an affirmative defense and is subject to waiver." *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003). And Farmers and Mid-Century assert their statute of limitations defense under Missouri law, without any citation to Kansas law. The court thus proceeds under the premise that Mr. Howard's claims are timely under the Kansas statutes of limitations governing his actions and that Farmers and Mid-Century can prevail on this defense only if the claims are untimely under Missouri law. *But compare* Kan. Stat. Ann. § 60-513(a) (two-year statute of limitations for fraudulent misrepresentation claims), *with* Mo. Rev. Stat. § 516.120 (five-year statute of limitations for fraudulent misrepresentation claims).

### ii.    Prior Pending Action Rule

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)). Although abstention doctrines typically do not apply when actions presenting the same claims are filed in multiple federal courts, there remains a role for "considerations of 'wise judicial administration, giving regard to conservation of judicial

resources and comprehensive disposition of litigation.'" *Id.* at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). And, "the general principle is to avoid duplicative litigation." *Id.* at 818.

These considerations have coalesced to form the "prior pending action doctrine," which courts have described as follows:

> The prior pending action doctrine is based on federal court efficiency and may be applied when two pending federal court actions involve the same or similar claims and parties. Under the doctrine, the first federal action is generally given priority, absent a showing of greater convenience or special circumstances that favor the second action, in order to avoid duplicative litigation. The second action may be either stayed or dismissed.

*Friedlander v. Cook*, No. CIV 06-1160 JB/DJS, 2008 WL 4820820, at *9 (D.N.M. Aug. 13, 2008) (quoting *In re Telluride Glob. Dev., LLC*, 380 B.R. 585, 593 (B.A.P. 10th Cir. 2007)); *see also Metabolite Labs., Inc. v. AmerisourceBergen Corp.*, No. CIVA04CV02501WYDCBS, 2005 WL 2105035, at *3 (D. Colo. Aug. 30, 2005) ("The prior pending action rule, a change of venue principle, permits the transfer or dismissal of subsequently commenced litigation involving the same parties and the same issues when both suits are pending in federal courts." (citing *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 77 (2d Cir. 1989))).

### iii.    Application to Claims for Relief

#### a.    Count One

Count One advances a fraudulent misrepresentation claim based on Farmers and Mid-Century telling Mr. Howard that he failed to pay his premiums on Policy Number 92564-27-03. Under Missouri law, a plaintiff has five years to bring "[a]n action for relief on the ground of fraud." Mo. Rev. Stat. § 516.120; *see also Dueker v. First Midwest Bank of Poplar Bluff*, 223 S.W.3d 181, 184 (Mo. Ct. App. 2007) (applying five-year statute of limitations in Mo. Rev. Stat. § 516.120 to fraudulent misrepresentation claim). And, an action accrues for purposes of the

five-year period on the earlier of the following two dates:  (1) when the plaintiff learns of the misrepresentation or (2) ten years after the fraud occurred.  Mo. Rev. Stat. § 516.120; *see also Ellison v. Fry*, 437 S.W.3d 762, 769 (Mo. 2014) (en banc) ("Under [§ 516.120], all fraud claims must be brought within five years from when the cause of action accrues, which is either when the fraud is discovered or at the end of 10 years after the fraud takes place, whichever occurs first.").

Mr. Howard alleges Farmers and Mid-Century made the fraudulent misrepresentation to him about Policy Number 92564-27-03 on December 1, 2007.  At the time of the representation, Mr. Howard knew whether he had paid his premiums on Policy Number 92564-27-03.  Thus, when Farmers and Mid-Century made the representation, Mr. Howard possessed all the facts necessary to bring his fraudulent misrepresentation claim.  This means the action accrued on December 1, 2007.  The statute of limitations thus expired in December 2012.  But Mr. Howard did not file the present action until February 2018, well after the statute of limitations had run.

The court dismisses Count One because it is time-barred.  And the court dismisses Count One with prejudice.  *See Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 744 F. Supp. 2d 1178, 1187–88 (D. Kan. 2010) (collecting Kansas authority and stating, "under Kansas law a dismissal based upon the statute of limitations operates as an adjudication upon the merits"); *see also Jordan v. Kansas City*, 929 S.W.2d 882, 886 (Mo. Ct. App. 1996) (collecting Missouri cases and stating, "[a] trial court's dismissal of an action on the basis of the statute of limitations is a final adjudication on the merits for purposes of *res judicata*").[1]

---

[1]     Because both Kansas and Missouri treat a dismissal based on the expiration of the statute of limitations as an adjudication on the merits, the court need not determine whether Kansas or Missouri law controls the preclusive effect of the dismissal in this situation, where Missouri law supplies the dispositive limitations periods through application of Kansas's borrowing statute.

### b.     Count Two

In Count Two, Mr. Howard raises a claim for fraudulent misrepresentation based on Farmers and Mid-Century's denial of the existence of Policy Number 92564-26-92 when litigating the Central District of California case.  Mr. Howard initiated the California litigation in 2012 and neither Mr. Howard's Complaint nor Farmers and Mid-Century's Memorandum in Support of its Motion to Dismiss identify when during the litigation Farmers and Mid-Century represented that Policy Number 92564-26-92 did not exist.  As the California litigation remains pending, it is possible that the representation at issue in Count Two occurred within five years of Mr. Howard filing the action before this court.  Further factual development would be necessary to resolve Farmers and Mid-Century's statute of limitations defense, rendering, perhaps, the defense appropriate for summary judgment.  But the court cannot decide the question on a motion to dismiss.  Also, the court questions whether Missouri's statute of limitations would apply where the representation at issue occurred in a court filing made in a California court.  But Farmers and Mid-Century do not present an argument for dismissal under California law.  For all these reasons, the court declines to dismiss Count Two based on Farmers and Mid-Century's statute of limitations defense.

But, the court dismisses the action under the prior pending action rule.  Mr. Howard, Farmers, and Mid-Century all are parties in the California action.  And, while Count Two may not be identical to the claim at issue in the California action, it is inextricably intertwined with Mr. Howard's claim in the California action that Farmers and Mid-Century improperly refused coverage for vandalism and theft at 4423 Kossuth Avenue.  Also, the California action predates the action before this court by several years and is scheduled for trial in just a few months.  Finally, Mr. Howard's Count Two claim amounts to a request for a court to impose sanctions

under Federal Rule of Civil Procedure 11 against Farmers and Mid-Century for a false representation in a court filing made with another federal court. Mr. Howard must direct this request to the Central District of California—where Farmers and Mid-Century filed the pleading or paper at issue. The court thus dismisses Mr. Howard's Count Two claim without prejudice to Mr. Howard seeking redress in the Central District of California.

### c.    Count Three

Count Three raises a breach of contract claim based on Farmers and Mid-Century's refusal to cover damage and loss at 4423 Kossuth Avenue because they concluded that the property was vacant when the vandalism and theft allegedly occurred. A suit seeking payment on an insurance policy is governed either by the five-year statute of limitations established by Section 516.120 of the Missouri Revised Statutes or the ten-year statute of limitations established by Section 516.110 of the Missouri Revised Statutes.[2] *Loeffler v. City of O'Fallon*, 71 S.W.3d 638, 643 (Mo. Ct. App. 2002). Assuming for the sake of argument that the ten-year statute of limitations applies to Mr. Howard's Count Three claim, the claim is time-barred. Mr. Howard alleges Farmers and Mid-Century denied coverage "on or about September 14, 2006."[3] Doc. 1 at

---

[2]    Section 516.120 creates a five-year statute of limitations for "[a]ll actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110." Section 516.110 creates a ten-year statute of limitations for "[a]n action upon any writing, whether sealed or unsealed, for the payment of money or property."

[3]    It is not clear which policy covering 4423 Kossuth Avenue Mr. Howard relies on to bring Count Three's claim. The allegations under the Count Three heading refer to Policy Number 92564-26-92. Doc. 1 at 12 (Compl. ¶ 33). But, Mr. Howard's earlier allegations assert that he submitted a claim with Farmers and Mid-Century on Policy Number 92838-63-11 and that they denied coverage on this insurance claim. *Id.* at 6–7 (Compl. ¶¶ 12–13). These earlier allegations, coupled with Count Three's allegation that Farmers and Mid-Century refused payment on the insurance policy, *id.* at 13 (Compl. ¶ 37), lead the court to conclude that Mr. Howard inadvertently referenced Policy Number 92564-26-92 in Count Three when he intended to advance a claim for denial of coverage on Policy Number 92838-63-11. The court conducts its statute of limitations analysis with this likely inadvertence in mind. But, even if Mr. Howard meant to make a breach of contract claim under Policy Number 92564-26-92, the claim would fail because (1) the only denial of coverage alleged in the Complaint occurred more than 10 years before Mr. Howard filed suit; and (2) Mr. Howard never alleges, for purposes of Federal Rule of Civil Procedure 8(a) and the elements of his breach of contract claim, that he filed an insurance claim on Policy Number 92564-26-92.

7 (Compl. ¶ 13).  The denial of insurance coverage triggers limitation periods established by §§ 516.110, 516.120.  *Loeffler*, 71 S.W.3d at 642–43.  Mr. Howard thus had until September 2016, to file Count Three's claim for breach of contract.  But because he did not commence this action until February 2018, the statute of limitations expired.  The court thus dismisses Count Three with prejudice.

### d.      Count Four

Count Four advances a claim for vexatious refusal.  To prevail on such a claim, the plaintiff must prove that (1) he had a valid insurance contract with the insured; (2) the insured refused its coverage obligation under the policy; and (3) the refusal of coverage was "without reasonable cause or excuse."  *Shirkey v. Guar. Tr. & Life Ins. Co.*, 258 S.W.3d 885, 888 (Mo. Ct. App. 2008) (quoting *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006)).  A vexatious refusal claim is derivative of a breach of contract claim.  *See Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 191–92 (Mo. Ct. App. 2012) (describing vexatious refusal claim as "derivative" of breach of contract claim and affirming dismissal of vexatious refusal claim because breach of contract claim failed as a matter of law).  The statute of limitation analysis supporting this court's dismissal of Count Three thus applies equally to Count Four.  The court dismisses Count Four with prejudice.

### e.      Count Five

Count Five raises a claim for civil conspiracy.  "A civil conspiracy 'does not give rise to a civil action unless something is done pursuant to which, absent the conspiracy, would create a right of action against one of the defendants, if sued alone.'"  *Hibbs v. Berger*, 430 S.W.3d 296, 320 (Mo. Ct. App. 2014) (quoting *Gettings v. Farr*, 41 S.W.3d 539, 541–42 (Mo. Ct. App. 2001)); *see also Doctors' Co. v. Superior Court*, 775 P.2d 508, 510 (Cal. 1989) (en banc) ("A

civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." (quotation marks omitted)); *Barney v. Aetna Cas. & Surety Co.*, 230 Cal. Rptr. 215, 224–25 (Cal. Ct. App. 1986) (identifying civil conspiracy as way to join defendants for purposes of damage liability but not as a tort or cause of action). "If the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well." *Hibbs*, 430 S.W.3d at 320 (quoting *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008)). And where legal action on the underlying claim is time-barred, a plaintiff may not proceed on a civil conspiracy claim based on the wrongful acts forming the underlying time-barred claim. *See Dean v. Noble*, 477 S.W.3d 197, 206 (Mo. Ct. App. 2015) ("[B]ecause the fraud claim was properly dismissed as time-barred, the derivative constructive trust and conspiracy claims against all the Respondents also were properly dismissed.").

Here, Mr. Howard alleges all the defendants conspired to advance perjured testimony by Ms. Haskins in an effort to substantiate Farmers and Mid-Century's decision to deny coverage for vandalism and theft at 4423 Kossuth Avenue. Mr. Howard has styled his civil conspiracy claim as derivate of his breach of contract claim in that the conspiracy furthered the breach of contract. And, where the court dismisses the breach of contract claim as time-barred, Missouri law compels that the court also dismiss the civil conspiracy claim. And, the court dismisses the claim with prejudice.

### B. Mr. Scher and WPDS's Motion

#### 1. Rule 12(b)(2) Standard of Review

A plaintiff bears the burden to establish personal jurisdiction over each defendant named in the action. *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750

F.3d 1178, 1179–80 (10th Cir. 2014) (citation omitted). But in the preliminary stages of a case, a plaintiff's burden to prove personal jurisdiction is light. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citation omitted).

Where, as here, the court is asked to decide a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, plaintiff, to survive the motion, must make no more than a prima facie showing of jurisdiction. *Id.* at 1056–57. "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

To defeat a plaintiff's prima facie showing of personal jurisdiction, defendants "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Where defendants fail to controvert a plaintiff's allegations with affidavits or other evidence, the court must accept the well-pleaded allegations in the complaint as true, and resolve any factual disputes in plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

### 2.    Analysis

Mr. Scher and WPDS contend the court lacks personal jurisdiction over them. In a diversity action like this one, a plaintiff must show that exercising jurisdiction is proper under the laws of the forum state and that doing so comports with the Constitution's due process requirements. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994) (citation omitted). Kansas's long-arm statute is construed liberally to permit jurisdiction to the full extent permitted by the United States Constitution. *Id.* at 1305; *see also*

Kan. Stat. Ann. § 60–308(b)(1)(L) & (b)(2). Thus, it is unnecessary for the court to conduct a separate personal jurisdiction analysis under Kansas law, and instead, the court may proceed directly to the due process inquiry. *Federated Rural Elec. Ins. Corp.*, 17 F.3d at 1305; *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (where the state's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis" (citation and internal quotation marks omitted)).

This due process analysis involves a two-step inquiry: (1) first, the Court must determine whether the defendant has "minimum contacts with the forum state such that he should reasonably anticipate being haled into court there"; and (2) second, *if* the defendant's actions establish such minimum contacts, the court must then decide "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *AST Sports Sci., Inc.*, 514 F.3d at 1057 (citations and internal quotation marks omitted). The due process clause permits a court to exercise personal jurisdiction over a nonresident defendant so long as the defendant purposefully has established "minimum contacts" with the forum state. *Burger King*, 471 U.S. at 474. The "minimum contacts" standard is satisfied by establishing either (1) specific jurisdiction or (2) general jurisdiction. *Rockwood Select Asset Fund*, 750 F.3d at 1179.

Relative to specific jurisdiction, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Mr. Howard has alleged no facts permitting an inference that any of Mr. Scher or WPDS's alleged conduct supporting his claim against them occurred in Kansas. Instead, the Complaint precludes any inference of specific jurisdiction. The

Complaint alleges that Mr. Scher and WPDS represent Farmers and Mid-Century in an action in California. Doc. 1 at 3, 5 (Compl. ¶¶ 4, 43, 45); *see also id.* at 4. And the Complaint alleges that Ms. Haskins resided in Missouri previously and was domiciled in Illinois at the time Mr. Howard commenced this action. *Id.* at 4–5; *see also id.* at 6 (Compl. ¶¶ 10–11). Based on these allegations, there is zero basis to conclude any contact the private investigator had with Ms. Haskins occurred in Kansas, or that defendants formed their conspiracy in Kansas or committed an act furthering the conspiracy in Kansas.

Next, a court may exercise general jurisdiction over a defendant if the defendant's contacts with the forum are "so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Mr. Scher attests he never has visited Kansas and that WPDS never has litigated a case in Kansas. Doc. 27-1 at 1–2 (Scher Aff. ¶¶ 2–3). Nothing in Mr. Howard's Complaint even suggests a contrary conclusion. Instead, the Complaint identifies Mr. Scher and WPDS as California residents without advancing any allegations tying them to Kansas. Doc. 1 at 3 (Compl. ¶ 4); *see also id.* at 4. And, in failing to respond in a timely fashion to Mr. Scher's and WPDS's motion, Mr. Howard failed to sustain his minimal burden to overcome Mr. Scher's attestations and to establish the court's personal jurisdiction over Mr. Scher and WPDS. The court thus dismiss Count Five against Mr. Scher and WPDS without prejudice.

### C. Dismissal of Claim Against Ms. Haskins

Rule 4 of the Federal Rules of Civil Procedure governs service of process. Under the Rule:

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a

specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Well over a year has elapsed since Mr. Howard commenced this action, but Mr. Howard has yet to complete service of process on Ms. Haskins. And, the court extended the deadline for Mr. Howard to complete service of process and provided Mr. Howard notice that if he did not show cause for his failure to serve Ms. Haskins, the court would dismiss his action against her for failure to prosecute. *See* Doc. 14 (extending Rule 4(m) deadline for service of process on Ms. Haskins); Doc. 35 (Notice and Order to Show Cause for failure to serve Ms. Haskins). Mr. Howard has not replied to the Notice and Order to Show Cause. The court thus dismisses without prejudice Count Five as against Ms. Haskins for failure to complete service of process and failure to prosecute.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Farmers and Mid-Century's Motion to Dismiss (Doc. 24) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** Counts One, Three, Four, and Five against Farmers and Mid-Century are dismissed with prejudice and Count Two against Farmers and Mid-Century is dismissed without prejudice.

**IT IS FURTHER ORDERED BY THE COURT THAT** Mr. Scher and WPDS's Motion to Dismiss Action (Doc. 26) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** Count Five against Mr. Scher and WPDS is dismissed without prejudice.

**IT IS FURTHER ORDERED BY THE COURT THAT** Mr. Howard's Count Five claim against Ms. Haskins is dismissed without prejudice for failure to complete service of process and failure to prosecute.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

**Dated this 23rd day of July, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
